UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| Abdul Naushad M.D., P.C., d/b/a Advanced Pain Center, | )<br>)<br>) |
| Petitioner, | )<br>) |
| v. | ) CASE NUMBER:_____<br>) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; Alex Azar, in his official capacity as Secretary of the United States Department of Health and Human Services, | )<br>)<br>)<br>)<br>)<br>) |
| Respondent. | )<br>) |

**PETITION FOR MANDAMUS**

Abdul Naushad, M.D., P.C., d/b/a Advanced Pain Center, by and through counsel, hereby petitions this Court pursuant to 28 U.S.C. §1361 for mandamus relief. In support of this Petition, Petitioner states:

**THE PARTIES**

1. Petitioner is a professional corporation.

2. Petitioner was organized in the State of Missouri.

3. Petitioner is in good standing in the State of Missouri.

4. Petitioner is the professional corporation of Abdul Naushad, M.D.

5. Abdul Naushad is a physician specializing in pain management.

6. Petitioner provides services to, among others, beneficiaries of the Medicare Part B health insurance program.

7. The United States Department of Health and Human Services ("HHS") administers the federal Medicare program through many components, including its agent, The Center for Medicare & Medicaid Services ("CMS").

**THE MEDICARE PROCESS OF SUSPENSION:  GENERALLY AND AS INVOLVED IN THIS MATTER**

8. Pursuant to 42 C.F.R. §§405.371 *et seq.*, CMS (and other carriers which administer the Medicare program) has the authority to suspend payments to healthcare providers in the interest of protection of the Medicare Trust Fund.

9. Suspensions may be imposed without prior notice in cases of suspected fraud or misrepresentation.  §405.372(a)(4).

10. Under such suspensions, a provider continues to participate in the Medicare program, but payments to it are placed directly into suspense accounts pending final resolution of the inquiry.

11. Once a suspension has been imposed without prior notice, a provider is able to submit a rebuttal statement "as to why the suspension should be removed."  §405.372(b)(2).

12. If a provider chooses to provide a rebuttal statement, "CMS, the intermediary, or carrier must within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted) together with any other material bearing upon the case, and determine whether the facts . . . justify the termination of the suspension, offset or recoupment."  §405.375(a).

13. This preliminary determination is not an official "initial determination" and is not appealable.  §405.375(c).

14. A suspension may continue for 180 days, but may be extended by an additional 180 days if CMS and its contractors are unable to complete the investigation.  §405.372(d).

15. The instant petition concerns itself primarily with §405.372(c)(2) entitled "Subsequent action."

16. Section 405.372(c)(2) provides:  (i) If a suspension of payment is based upon credible allegations of fraud in accordance with § 405.371(a)(2), subsequent action must be taken by CMS or the Medicare contractor to make a determination as to whether an overpayment exists; (ii) The rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation.

17. Petitioner's payments have been suspended for four (4) months, and no overpayment determination has been made.

18. On August 23, 2019, CMS suspended, summarily and without notice, all future Medicare payments to Petitioner based on credible allegations of fraud (Exhibit 1 – CMS 8-23-19 Letter, incorporated as if fully set forth herein).

19. Exhibit 1 referenced "information that Dr. Abdul Naushad, the sole owner of [Petitioner], and [Petitioner] misrepresented services billed to the Medicare program" and the July, 2019 indictment of Dr. Abdul Naushad and his wife, Wajiha Naushad, for allegedly using a version of a drug that is not FDA approved, and engaging in a healthcare fraud scheme.

20. Petitioner responded through counsel on September 10, 2019, by submitting its Rebuttal Statement pursuant to 42 C.F.R. §405.372(b)(2), in which Petitioner requested the payment suspension be removed.  (Exhibit 2 – Petitioner 9-10-19 Letter, incorporated as if fully set forth herein).

21. Counsel for Petitioner received a letter dated September 12, 2019 from CMS in response to Petitioner's Exhibit 2 – Petitioner 9-10-19 Letter.  The letter provides: "AdvanceMed [CMS] received the rebuttal statement dated September 10, 2019, you submitted on behalf of [Petitioner] regarding the payment suspension which took effect on August 23, 2019.  The rebuttal statement submitted therein is in the process of being reviewed.  A final response to the rebuttal will be forthcoming."  (Exhibit 3 – CMS 9-12-19 Letter, incorporated as if fully set forth herein).

22. Counsel for Petitioner, on September 24, 2019, sent additional information to CMS and again asked CMS to lift the payment suspension.  More specifically, counsel for Petitioner informed CMS that:

   a. In August, 2019, the Missouri Medicaid program issued its notice to Advanced Pain Center of its decision to suspend Missouri Medicaid payments to Petitioner for the same reason CMS issued its decision to suspend Medicare payments to Petitioner, i.e., both the Medicare payment suspension and the Missouri Medicaid payment suspension were based solely on the indictment of Dr. Abdul Naushad filed in the United States District Court for the Eastern District of Missouri;

   b. Petitioner filed an appeal of the Missouri Medicaid program's decision to suspend Missouri Medicaid payments to Petitioner with the Missouri Administrative Hearing Commission, the venue to which such appeals must be filed in the state of Missouri;

   c. Petitioner also filed a Motion for Stay, asking the Missouri Administrative Hearing Commission to lift the Missouri Medicaid program's payment suspension of Petitioner;

   d. The Missouri Administrative Hearing Commission issued its Order determining that Petitioner established immediate and irreparable loss of income and damages to its Missouri Medicaid patients and employees will result if it was denied a stay in that it will have to close down and discontinue providing services to patients;

    e. The Missouri Administrative Hearing Commission also found Petitioner established that its medical providers will be unable to treat current patients and Advanced Pain Center will be unable to continue its practice and provide salaries to its employees.

(Exhibit 4 – Petitioner 9-24-19 Letter, incorporated as if fully set forth herein).

23. On October 24, 2019, counsel for Petitioner received further correspondence from CMS in which CMS stated: "Today, I received your phone message requesting a status on the rebuttal for Dr. Naushad/Advanced Pain Center [Petitioner]. We have forward[ed] your rebuttal statement and supplemental letter to CMS. We are currently reviewing the statement, supplemental letter and drafting a final response. You will be notified in writing once CMS has made a determination regarding the payment suspension." (Exhibit 5 – CMS Letter 10-24-19, incorporated as if fully set forth herein).

24. On November 8, 2019, counsel for Petitioner sent an email message to CMS, stating: "…[T]wo weeks have now elapsed since I received your email message below [referring to Exhibit 5]. Please let me know the date on which we should anticipate receiving the Medicare payment suspension determination. Our Rebuttal Statement and Supplemental Letter clearly show that the Medicare payment suspension is no longer warranted under the applicable regulations." (Exhibit 6 – Petitioner 11-8-19 Letter, incorporated as if fully set forth herein).

25. In response to Petitioner's counsel email message of November 8, 2019 (Exhibit 6), CMS stated via email message: "At this time we don't have an estimated date of when the provider will receive a response to their rebuttal statement, the rebuttal remains under CMS consideration and provider will be notified in writing once CMS has made a determination regarding the payment suspension." (Exhibit 6).

26. Counsel for Petitioner, on November 4, 2019, sent another letter to CMS.  (Exhibit 7 – Petitioner 11-4-19 Letter, incorporated as if fully set forth herein).  In Exhibit 7, counsel for Petitioner stated:

> As you are aware, federal law (42 C.F.R. § 405.375), provides:
>
> (a) Submission and disposition of evidence. If the provider or supplier submits a statement, under § 405.374, as to why a suspension of payment, offset, or recoupment should not be put into effect, or, under § 405.372(b)(2), why a suspension should be terminated, **CMS, the intermediary, or carrier must within 15 days, from the date the statement is received, consider the statement (including any pertinent evidence submitted), together with any other material bearing upon the case, and determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment.**
>
> We have fully complied with federal law in submitted the rebuttal statement in a timely manner. AdvanceMed Corporation, however, is clearly and inexcusably in violation of the federal law delineated above. As Medicare providers, and federal taxpayers, we would appreciate, and deserve, reciprocity in complying with federal law.

27. In response to Exhibit 7, CMS sent an email message to Petitioner's counsel on November 13, 2019, stating:

> We have reviewed your letter dated November 4, 2019, regarding the Rebuttal Statement you submitted on behalf of Advanced Pain Center and below is our response: The Medicare Program Integrity Manual (MPIM), section, 8.3.2.2.5, states that if a full response cannot be drafted in the required timeframe, the ZPIC/UPIC shall draft an interim response for release that is approved by CMS. We sent you an interim response via UPS on September 12, 2019 and you received it on September 17, 2019.

(Exhibit 8 – CMS 11-13-19 Letter, incorporated as if fully set forth herein).

28. On November 18, 2019, counsel for Petitioner sent a further letter to CMS, requesting CMS lift the payment suspension.   (Exhibit 9 – Petitioner 11-18-19 Letter, incorporated as if fully set forth herein).

29. In response to Exhibit 9, CMS sent a letter dated November 20, 2019 in which it stated: "The Centers for Medicare & Medicaid Services (CMS) and AdvanceMed received your

6

correspondence dated November 18, 2019 requesting that CMS lift the payment suspension on Abdul Naushad MD PC d/b/a Advanced Pain Center which took effect on August 23, 2019. Your correspondence and its attachment are in the process of being reviewed. A final response to the letter will be forthcoming." (Exhibit 10 – CMS Letter 11-20-19, incorporated as if fully set forth herein).

30. On December 8, 2019, counsel for Petitioner again sent a letter to CMS (Exhibit 11 – Petitioner 12-8-19 Letter, incorporated as if fully set forth herein) invoking CMS' obligation pursuant to 42 C.F.R. § 405.375 to, within fifteen (15) days of receipt of the Rebuttal Letter "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment."

31. Further, counsel for Petitioner sent another letter to CMS on December 13, 2019, invoking 42 C.F.R. §405.371(b)(1)(ii), pursuant to which Petitioner requested CMS find good cause exists not to suspend payments or not to continue to suspend payments to an individual or entity against which there are credible allegations of fraud if "it is determined that beneficiary access to items or services would be so jeopardized by a payment suspension in while or part as to cause a danger to life or health." (Exhibit 12 – Petitioner 12-13-19 Letter [without attachments], incorporated as if fully set forth herein).

32. Despite all of these attempts by Petitioner to lift the payment suspension and/or to enforce CMS' obligation pursuant to 42 C.F.R. § 405.375 to, within fifteen (15) days of receipt of the Rebuttal Letter (Exhibit 2) "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment", the suspension continues today and, according to the August 27, 2019 payment

suspension letter (Exhibit 1), "may last until such time that there is a resolution of that investigation."

**JURISDICTION**

33. This Court bears subject matter jurisdiction over the issues presented herein.

34. Ordinarily, claims arising under the Social Security Act require that administrative remedies be exhausted before judicial review, but, the Social Security Act does not preclude mandamus jurisdiction over procedural matters." *Anderson v. Sullivan*, 959 F.2d 690, 693 (8th Cir. 1992).

35. "Mandamus jurisdiction lies where the claims are 'against the secretary for failure to comply' with regulations." *Smith v. Schweiker*, 709 F.2d 777, 779 (2d Cir. 1983).

36. The present matter does not pertain to amount determinations or program eligibility, but to CMS' failure to perform its duty under the applicable regulations.

37. CMS has extended Petitioner's payment suspension well beyond a reasonable timeframe and has not to date proffered an estimated amount of overpayment.

38. Payment suspensions (as opposed to "initial determinations") are not appealable (see 42 C.F.R. §405.375(c):  "A determination make under paragraph (a) of this section is not an initial determination and is not appealable.")

39. As such, by its refusal to determine an overpayment amount, CMS has rendered Petitioner incapable of availing itself of the administrative appeals process.

**VENUE**

40. Suits against government officers acting in their official capacities or under color of office or legal authority, and against government agencies or the United States, may be brought, pursuant to 28 U.S.C. § 1391(e), in any judicial district in which: A. A defendant in the action resides; B. A substantial part of the events or omissions giving rise to the claim occurred, or a substantial part of property that is the subject of the action is situated; or C. The plaintiff resides if no real property is involved in the action.

41. Venue is proper in the United States District Court, Eastern District of Missouri, as a substantial part of the events or omissions giving rise to Petitioner's claim occurred in said District.

**RELIEF REQUESTED**

42. Petitioner requests this Court grant mandamus relief by ordering the Secretary's prompt compliance, within 14 days of such order, through its agent CMS, with CMS' obligation pursuant to 42 C.F.R. § 405.375 to "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment".

43. Petitioner, as a provider of healthcare services to participants in the Medicare program, has a clear right to the relief sought, and Respondent's agent, CMS, has a clear legal duty under 42 C.F.R. §405.372(c) to make overpayment determinations.

44. Until those determinations are made, Petitioner may not advance to the next step in the administrative process, and thus no other adequate remedy is available to it.

WHEREFORE, Petitioner requests this Court grant mandamus relief by ordering the Secretary's prompt compliance, within 14 days of such order, through its agent CMS, with CMS' obligation pursuant to 42 C.F.R. § 405.375 to "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment", and for such other and further relief as the Court deems just and proper in the circumstances.

Respectfully submitted,

*/s/ Markus P. Cicka*
Markus P. Cicka, #42192
Attorney for Petitioner Abdul Naushad, M.D., P.C., d/b/a Advanced Pain Center
Law Office of Markus P. Cicka, LLC
Bemiston Tower
231 South Bemiston
Suite 800, PMB #50
Clayton, Missouri 63105
Telephone:  (877) 579-9499
Facsimile:  (877) 579-9499
Email:  markus@cickalaw.com