**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION**

| | |
|---|---|
| ABDUL NAUSHAD, M.D., d/b/a ADVANCED PAIN CENTER, | ) ) ) |
| Petitioner, | ) ) ) |
| v. | ) ) No. 4:20-CV-00018 JAR ) |
| UNITED STATES DEPARTMENT OF HEALTH AND HUMAN SERVICES; ALEX AZAR, in his capacity as Secretary of The United States Department of Health and Human Services, | ) ) ) ) ) ) ) |
| Respondent. | ) |

**MEMORANDUM AND ORDER**

Petitioner Abdul Naushad, M.D., P.C., d/b/a/ Advanced Pain Center's ("APC"), a Missouri pain management clinic, brings this action against the Secretary of the U.S. Department of Health and Human Services ("Respondent") in connection with alleged violations of the Medicare Act, 42 U.S.C. §§ 1395 *et seq*, and its implementing regulations, 42 C.F.R. § 405. APC seeks a writ of mandamus directing Respondent to require compliance with the applicable regulations. Respondent has moved to dismiss APC's claim for lack of subject matter jurisdiction. (Doc. No. 6). The motion is fully briefed and ready for disposition. For the following reasons, the motion will be granted.

**Factual background**

The Court takes the following factual allegations from APC's petition for mandamus and the exhibits attached thereto. (Petition for Mandamus ("Pet."), Doc. No. 1; Doc. No. 1-7). APC is a Missouri pain management clinic providing services to, among others, beneficiaries of the

1

Medicare Part B health insurance program. Dr. Abdul Naushad is APC's principal. Respondent administers the Medicare program through the Center for Medicare & Medicaid Services ("CMS").

In July 2019, Dr. Naushad was charged with federal offenses pertaining to the illegal importation and use of a foreign injectable drug known as Orthovisc, which was not approved by the U.S. Food and Drug Administration. See United States v. Naushad, Case No. 4:19-CR-591-ERW-NAB (E.D. Mo. July 2019). On August 23, 2019, CMS, through its contractor AdvanceMed Corporation ("AdvanceMed"), suspended APC's Medicare reimbursements based on credible allegations of fraud. The Notice of Suspension advised APC of its right to submit a rebuttal statement and that, if it did, CMS would determine within 15 days whether it would change its suspension determination. (Doc. No. 1-7 at 1). AdvanceMed further explained that, "[i]f the suspension [was] continued, CMS [would] review additional evidence during the suspension period to determine whether claims are payable and/or whether an overpayment exists, and, if so, the amount of the overpayment." (Id. at 2-3).

On September 10, 2019, APC submitted a rebuttal statement requesting CMS lift the suspension in part because Dr. Naushad's indictment focused on "a technical violation of a complex regulatory regime." (Id. at 6). AdvanceMed responded with an interim rebuttal response two days later on September 12, 2019, explaining that its rebuttal statement "[wa]s in the process of being reviewed" and that "[a] final response to the rebuttal [would] be forthcoming." (Id. at 9).

On September 24, 2019, APC submitted a supplement to its September 10, 2019 Rebuttal Statement detailing information about APC's separate Medicaid suspension proceedings before the Missouri Administrative Hearing Commission. (Id. at 10-11). Thereafter, APC contacted AdvanceMed on six separate occasions asking for status updates and demanding a final

2

determination regarding the suspension. AdvanceMed consistently notified APC that it was reviewing APC's submissions and that a final response was forthcoming. AdvanceMed further explained that it had already provided its interim response to APC's rebuttal letter on September 12, 2019, as allowed by the Medicare Program Integrity Manual, which permits an interim response to a rebuttal letter if a full response cannot be completed within the required timeframe. (Doc. No. 1-7 at 18).

APC continued to submit letters and evidence for CMS and AdvanceMed to consider in determining whether to lift the suspension, including a copy of a letter it submitted to UnitedHealthcare, which had also suspended APC's network participation based on Dr. Naushad's indictment. The letter proffered reasons "the network participation suspension should be overturned and Dr. Naushad's network participation privileges with UnitedHealthcare immediately restored." (Pet. at ¶ 22).

On December 13, 2019, APC sent another letter, urging CMS and AdvanceMed to find that good cause existed to lift APC's suspension, because the Medicare suspension was jeopardizing beneficiaries' access to care. With this letter, APC submitted new evidence for consideration, specifically, a declaration from APC's office manager (who is also Dr. Naushad's wife), and "statements from [APC's] Medicare beneficiaries." (Doc. No. 1-7 at 25-30).

On January 6, 2020, APC filed the instant petition requesting this Court grant mandamus relief by ordering Respondent's prompt compliance, through its agent CMS, with CMS' obligation pursuant to 42 C.F.R. § 405.375 to "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment." (Pet. at ¶ 42). On February 11, 2020, CMS responded to APC's rebuttal statement, advising APC that its payment suspension would continue. (Doc. No. 8-1 at 4-10).

**Regulatory background**

Pursuant to Medicare regulations, CMS may suspend Medicare reimbursements to a healthcare provider "in whole or in part" if it has been "determined that a credible allegation of fraud exists against a provider or supplier." 42 C.F.R. § 405.371(a)(2). A credible allegation of fraud is "an allegation from any source, including ... civil fraud claims cases, and law enforcement investigations." 42 C.F.R. § 405.370(a). The decision to suspend payment or continue a payment suspension is made at the discretion of CMS. See 42 C.F.R. § 405.371 (providing CMS "may" suspend Medicare payments in certain circumstances and "may" decide not to suspend payments "for good cause.") The suspension, however, is not indefinite. The regulations allow, but do not require, CMS to maintain the suspension until a "legal action is terminated by settlement, judgment, or dismissal, or when the case is closed or dropped because of insufficient evidence to support allegations of fraud." 42 C.F.R. §§ 405.370(a) and .372(d)(3); see also § 405.371(b)(3)(ii) (CMS may extend the suspension of payment if the Department of Justice submits a written request that "suspension of payments be continued based on the ongoing investigation and anticipated filing of criminal or civil action or both or based on a pending criminal or civil action or both.").

The provider may submit a statement of rebuttal as to why the suspension should be removed. 42 C.F.R. § 405.372(b)(2). However, the implementation of a payment suspension is not an appealable determination. See 42 C.F.R. § 405.375(c); PainMD, LLC v. Azar, No. 3:18-CV-01346, 2019 WL 4016120, at *2-3 (M.D. Tenn. Aug. 26, 2019); MedPro Health Providers, LLC v. Hargan, Case No. 17C1568, 2017 WL 4699239, at *2 (N.D. Ill. Oct. 19, 2017); MJG Mgt. Assoc., Inc. v. NHIC Corp., No. 12-11414, 2013 WL 1946220, at *2 (D. Mass. May 9, 2013). Although suspension determinations are not appealable, providers are entitled to appeal any subsequent claims determination through an administrative process that culminates in a decision

by the Medicare Appeals Council. 42 C.F.R. § 405.904(a)(2). The Appeals Council decision is final and subject to judicial review in federal district court. 42 U.S.C. §§ 405(g)-(h).

### Legal standard

Respondent moves to dismiss APC's petition for lack of subject matter jurisdiction. See Fed. R. Civ. P. 12(b)(1). A motion to dismiss under Federal Rule of Civil Procedure 12(b)(1) challenges a federal court's subject matter jurisdiction over a cause of action. "Rule 12(b)(1) movants may assert either a 'facial' or [a] 'factual' attack on [a federal court's subject matter] jurisdiction." Moss v. United States, 895 F.3d 1091, 1097 (8th Cir. 2018). When deciding a motion under Rule 12(b)(1), the court "must distinguish between a facial attack – where it looks only to the face of the pleadings – and a factual attack – where it may consider matters outside the pleadings." Croyle by and through Croyle v. United States, 908 F.3d 377, 380 (8th Cir. 2018). Here, Respondent's motion presents a facial attack on jurisdiction, with the exception of one discrete issue that requires reliance on certain limited matters outside of the pleadings; namely, CMS's February 11, 2020 response to APC's rebuttal statement. Regardless, APC bears the burden of establishing that jurisdictional requirements are met. Titus v. Sullivan, 4 F.3d 590, 593 n. 1 (8th Cir. 1993); Buckler v. United States, 919 F.3d 1038, 1044 (8th Cir. 2019) (citation omitted).

### Discussion

Pursuant to 28 U.S.C. § 1361, "district courts shall have original jurisdiction of any action in the nature of mandamus to compel an officer or employee of the United States or any agency thereof to perform a duty owed to the plaintiff." "A district court may grant a writ of mandamus only in extraordinary situations and only if: (1) the petitioner can establish a clear and indisputable right to the relief sought, (2) the defendant has a nondiscretionary duty to honor that right, and (3) the petitioner has no other adequate remedy." Castillo v. Ridge, 445 F.3d 1057, 1060–61 (8th Cir.

2006) (citing In re SDDS, Inc., 97 F.3d 1030, 1034 (8th Cir. 1996)); Integrated Nursing & Health Servs. Inc. v. Centers for Medicare & Medicaid Servs., No. CV 17-683 (DWF/KMM), 2017 WL 1373265, at *3 (D. Minn. Apr. 13, 2017). Further, whether a writ of mandamus should issue is largely a matter within the district court's discretion Id. (citing In re MidAmerican Energy Co., 286 F.3d 483, 486 (8th Cir. 2002) (per curiam)).

APC seeks a writ of mandamus directing Respondent to require CMS' compliance with its obligation pursuant to 42 C.F.R. § 405.375 to "determine whether the facts justify the suspension, offset, or recoupment or, if already initiated, justify the termination of the suspension, offset, or recoupment." (Pet. at ¶ 42). APC asserts that, as a provider of healthcare services to participants in the Medicare program, it "has a clear right to the relief sought, and Respondent's agent, CMS, has a clear legal duty under 42 C.F.R. §405.372(c) to make overpayment determinations." (Id. at ¶ 43). Until those determinations are made, APC contends it "may not advance to the next step in the administrative process, and thus no other adequate remedy is available to it." (Id. at ¶ 44).

The Court finds APC has failed to establish the requirements for mandamus jurisdiction. First, APC has not stated a clear, indisputable right to relief. APC's request under 42 C.F.R. § 405.375 is arguably moot in light of CMS's February 11, 2020 response to its rebuttal statement. Regardless, APC is not entitled to a final determination regarding its suspension at this time because CMS has no obligation under 42 C.F.R. § 405.372(c)(2) to make any final determinations or lift the suspension before the investigation of APC is resolved, which includes the pendency of a civil or criminal action. 42 C.F.R. § 405.372(d)(3)(ii); 42 C.F.R. § 405.370; see also 42 C.F.R. § 405.372(c)(ii) ("The rescission of the suspension and the issuance of a final overpayment determination to the provider or supplier may be delayed until resolution of the investigation.").

6

Moreover, APC cannot establish that CMS has a clear, nondiscretionary duty. As noted above, the decision to suspend payment or to continue a payment suspension is made at the sole discretion of CMS. See 42 C.F.R. § 405.371 (providing CMS "may" suspend Medicare payments in certain circumstances and "may" decide not to suspend payments "for good cause.").

Finally, APC has failed to demonstrate that it has no remedy other than mandamus because it has not even begun the four-part administrative review process provided by the Medicare Act. See 42 U.S.C. § 405(g) (requiring administrative exhaustion as a prerequisite for claims arising under the Medicare Act); 42 C.F.R. § 405.904(a)(2) (describing four-step administrative review).[1] See Hargan, 2017 WL 4699239, at *4 (citing Heckler v. Ringer, 466 U.S. 602, 616 (1984); Michael Reese Hosp. & Med. Ctr. v. Thompson, 427 F.3d 436, 443 (7th Cir. 2005) ("[E]xhaustion of administrative remedies is a prerequisite of subject matter jurisdiction under both the federal question and mandamus theories....")).

The Court notes that APC does not address the issue of subject matter jurisdiction in its opposition to Respondent's motion. Instead, APC argues that by extending its payment suspension well beyond the 15-day time requirement of 42 C.F.R. § 405.375, CMS has left it stranded without any rights of administrative appeal. (Doc. No. 10 at 4). APC's argument is unavailing because 42 C.F.R. § 405.375 does not limit the length of a suspension to 15 days. Rather, as discussed above, suspensions based on credible allegations of fraud may last until the resolution of the underlying investigation. Moreover, a provider's right to appeal is triggered by an overpayment determination,

---

[1] The four-part administrative review process as follows: First, the provider can seek redetermination from the contractor. 42 U.S.C. § 1395ff(a)(3); 42 C.F.R. §§ 405.904, 405.940–958. Second, the provider can seek reconsideration by a qualified independent contractor. 42 U.S.C. § 1395ff(c); 42 C.F.R. §§ 405.904, 405.960–966. Third, if the amount in controversy minimum is met, the provider can request a hearing from an ALJ. 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.904, 405.1000–1058. Finally, the provider can seek review of the ALJ's decision by the Medicare Appeals Council. 42 U.S.C. § 1395ff(d); 42 C.F.R. §§ 405.1100–1130. The Council's decision is final and subject to judicial review in federal district court. 42 U.S.C. §§ 405(g)–(h), 1395ii; 42 C.F.R. §§ 405.1130–36.

not by a decision to continue or lift a suspension after considering a provider's rebuttal statement. 42 C.F.R. § 405.904(a)(2).

APC also challenges the merits of the payment suspension, arguing there are "less drastic means" available to CMS to protect its interest, such as prepayment review or partial suspension. (Doc. No. 10 at 5). Such a challenge "impermissibly invites the Court to delve into the Secretary's discretionary authority to implement the suspension in the first instance." Azar, 2019 WL 4016120, at *4-5 (citing 42 C.F.R. § 405.371). Challenges to CMS's discretion in implementing – and continuing to implement – suspensions must be channeled through the four-part administrative process before reaching the courts. See Hargan, 2017 WL 4699239, at *4-5 (dismissing mandamus claim for lack of subject matter jurisdiction and requiring administrative exhaustion where provider alleged that AdvanceMed's refusal to consider all rebuttal materials constituted a violation of 42 C.F.R. § 405.375(a)); Integrated Nursing & Health Servs., Inc. v. Ctrs. for Medicare & Medicaid Servs., No. CV 17-683 (DWF/KMM), 2017 WL 1373265, at *3 (D. Minn. Apr. 13, 2017) (court lacked mandamus jurisdiction over case challenging Medicare suspension, because provider "failed to demonstrate that it ha[d] no other remedy other than mandamus" in light of the "four layers of administrative review," and CMS "exercise[d] discretion in evaluating whether there were credible allegations of fraud and whether suspension was warranted").

APC complains that its payments have been suspended for months, and no overpayment determination has been made. The Court is cognizant of the hardship caused by requiring a provider to wait for an overpayment determination so that it can raise and exhaust its claims. However, the Court "will not upset the balance Congress chose to strike between the competing considerations of individual hardship and systemic efficiency." Hargan, 2017 WL 4699239, at *5

(citing Ringer, 466 U.S. at 627) ("Congress must have felt that cases of individual hardship resulting from delays in the administrative process had to be balanced against the potential for overly casual or premature judicial intervention in an administrative system that processes literally millions of claims every year.")).

**Conclusion**

Because APC has failed to establish that it has a clear and indisputable right to the relief sought, that Respondent has a nondiscretionary duty to honor that right, and that it has no other adequate remedy, see Castillo, 445 F.3d at 1060–61, the Court lacks subject matter jurisdiction over the claims in this case and the petition will be dismissed.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' Motion to Dismiss for Lack of Subject Matter Jurisdiction [6] is **GRANTED**. The Petition for Mandamus is **DISMISSED** without prejudice.

Dated this 29th day of May, 2020.

_____
**JOHN A. ROSS**
**UNITED STATES DISTRICT JUDGE**